IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY A. McFARLAND, ) | No. C 13-00147 EJD (PR) |
| Petitioner, ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |
| v. ) | |
| RICK HILL, Warden, ) | |
| Respondent. ) | |

Petitioner has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

**BACKGROUND**

Petitioner was found guilty of two counts of assault with a firearm, one count of unlawful possession of a firearm, and one count of residential burglary by a jury in San Mateo County Superior Court. (Pet. at 1.) The jury also found true the enhancement allegation that Petitioner personally used a firearm during the assaults and burglary. (Id.) Petitioner was sentenced to ten years and four months in state prison on May 25, 2011. (Id.)

Petitioner appealed his conviction. The California Court of Appeal affirmed the judgment on August 20, 2012. (Ans. Ex. E.) The California Supreme Court denied review on October 24, 2012. (Id., Ex. G.)

Petitioner filed the instant federal habeas petition on December 17, 2012.

## FACTUAL BACKGROUND

The California Court of Appeal summarized the facts as follows:

> The charges stemmed from an incident that occurred on March 25, 2009. That night, Arnold Celzo, Roderick Arce, Delon Johnson and Frank Medias were socializing in Celzo's mother's garage. A number of other people, including Celzo's mother, wife and young children, were inside the house. At about 12:15 a.m., two black men entered the open garage. The taller of the two men (the tall man) said, "'What's up,'" to Johnson and Medias, and they greeted each other. As the tall man approached Celzo and Arce, Arce asked Celzo, "Do you know this person?'" When Celzo replied that he did not, Arce knew something was wrong and said, "'Oh shit.'" Celzo, who was trained in martial arts, took a martial arts stance, "ready for anything to happen." The tall man said, "What up, nigga?", pulled out a semiautomatic handgun and pointed it at Arce.
>
> Arce ducked and ran out of the garage to call the police. Celzo put the tall man in a wrist lock and pinned him against the refrigerator. As Celzo grappled with the tall man, the other intruder asked Celzo to let the tall man go because they had gone to the "'wrong house.'" Celzo was "begging for [the tall man] not to shoot," and the tall man responded, "'I'm going to kill you.'" The other witnesses did not hear the tall man make such a threat. Celzo continued to place pressure on the tall man's wrist until the tall man's grip on the gun loosened. When Johnson said, "'I got the gun,'" both intruders fled.
>
> The police arrived shortly thereafter and Johnson gave the gun to the police. The police searched for the intruders and found [Petitioner] climbing the fence in the backyard of a residence that was three-tenths of a mile away from Celzo's mother's house. At trial, Celzo, Arce and Johnson identified [Petitioner] as the tall man who had entered the garage and pointed a weapon at them. The prosecution's expert found a "single source male profile" on the gun that matched [Petitioner's] DNA profile. The defense's expert found DNA from more than one individual on the gun and found the results were inconclusive.

(Ans. Ex. E at 2-3, footnote omitted.)

///

///

# DISCUSSION

I. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts

of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion. See Ylst, 501 U.S. at 805. In this case, the last reasoned opinion is that of the California Court of Appeal. (Ans. Ex. E.)

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam); Harrington v. Richter, 131 S. Ct. 770, 783-85 (2011); Felkner v. Jackson, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Id. at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

///

1   C.   Claims and Analysis

2   As grounds for federal habeas relief, Petitioner claims the trial court violated

3   his right to an impartial jury "by failing to conduct a hearing to investigate jury

4   misconduct." (Pet. at 3.)

5   The California Court of Appeal set forth the facts for this claim:

> On the third day of jury deliberations, the trial court received a note from Juror No. 2 stating: "Yesterday, May 24, 2011, near the end of the deliberation process a juror called into question my integrity regarding my ability to be an impartial juror based on the fact that the defendant and I have the same skin color. The juror wanted to be sure that I was not bias[ed] toward the defendant based on ethnicity. [¶] During the jury [selection] process, the defense attorney already asked that question and I found it offensive then and I found it offensive now. Not one non-black juror has been asked question regarding prejudice against the defendant based on skin color. What makes me different? I respectfully ask for guidance regarding why during the final stage of this process an individual can continue to question my impartiality based on skin color?"
>
> After receiving the note, the trial court conferred in chambers with counsel. The court then stated on the record, "What I intend to do is bring the jury in and read back just a portion of CALCRIM 3550 indicating that I've received a note from one of the jurors and then I'll send them back out again. Is there anything anybody wants to say for the record?" Defense counsel asked, "Did you want to indicate what – the issues that were raised in the note?" When the court responded that the note was going to be part of the record, counsel stated, "But the juror – okay. And I have informed my client what's been said in those notes." The court stated, "So... we're going to try this method and see what happens and see if we can go any further. Let's bring the jury out...."
>
> When the jury returned, the court stated, "Good morning. I received a note from one of the jurors; so in response to that, I know that you have several copies of the jury instructions back in the back, but I'm just going to reread a portion of one of the instructions just to remind you. All right. [¶] This is CALCRIM 3550. It is your duty to talk with one another and deliberate in the jury room. You shold try to agree on a verdict if you can. Each of you must decide the case for yourself, but only after you have discussed the evidence with the other jurors. [¶] Do not hesitate to change your mind if you become convinced that you are wrong, but do not change your mind just because other jurors disagree with you. Keep an open mind and openly exchange your thoughts and ideas about the case. Stating your opinions too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion. [¶] Please treat one another courteously. Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other." The court sent the jury to deliberate further. Later that day, the jury returned its verdicts

(Ans. Ex. E at 2-4, footnote omitted.)

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted). However, clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror bias is raised by the parties. Tracey v. Palmateer, 341 F.3d 1037, 1045 (9th Cir. 2003); see, e.g., Estrada v. Scribner, 512 F.3d 1227, 1241 (9th Cir. 2008) (district court did not abuse its discretion in declining to hold hearing on juror bias where state court's determination was not unreasonable in finding two jurors were not actually biased, and that juror bias could not be presumed based on jurors' honesty during voir dire); Sims v. Rowland, 414 F.3d 1148, 1153 (9th Cir. 2005) (trial court need not order a hearing sua sponte whenever presented with evidence juror bias).

Furthermore, Remmer v United States, 347 U.S. 227 (1954), and Smith v. Phillips, 455 U.S. 209 (1982), do not stand for the proposition that any time evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias. Smith states that this "may" be the proper course, and that a hearing "is sufficient" to satisfy due process. Tracey, 341 F.3d at 1044 (citing Smith, 455 U.S. at 217, 218). Smith leaves open the door as to whether a hearing is always required and what else may be "sufficient" to alleviate any due process concerns. Id.; see, e.g., Davis v. Woodford, 384 F.3d 628, 652-53 (9th Cir. 2004) (upholding state trial court's implicit rejection of juror bias claim, where juror submitted note to judge before deliberations expressing skepticism about whether defendant would remain in prison if jury returned a noncapital sentence, and judge provided a detailed instruction that jurors should presume that state officials would properly perform their duties when executing the sentence but did not conduct an

investigation); Tracey, 341 F.3d at 1044-45 (concluding that state trial court's decision not to question juror further to obtain names of other jurors and to take additional testimony from them was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent).

A court confronted with a colorable claim of juror bias will generally conduct a hearing involving all interested parties to explore the issue of juror bias and provide the defendant an opportunity to prove actual bias. See Hedlund v. Ryan, No. 09-99019, slip op. at 26 (9th Cir. Apr. 24, 2014). This is the remedy provided by the Supreme Court. Id. (citing Smith, 455 U.S. at 215). And so long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness. Id. at 27. See id. at 22-29 (state supreme court's decision that trial court did not abuse its discretion in refusing to dismiss a juror who discovered she was distantly related to victim was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent, where trial court held hearing and was reasonably satisfied that no actual bias was present).

The state appellate court rejected Petitioner's claim of jury misconduct:

> Criminal defendants have a constitutional right to a trial by an impartial jury. (U.S. Const., amends. VI and XIV; Cal. Const., art. I, § 16; *Irvin v. Dowd* (1961) 366 U.S. 717, 722; *People v. Nesler* (1997) 16 Cal.4th 561, 578.) "An impartial jury is one in which no member has been improperly influenced [citations] and every member is '"capable and willing to decide the case solely on the evidence before it"' [citations]." (*In re Hamilton* (1999) 20 Cal.4th 273, 293-294.) A trial court may discharge a juror and replace him or her with an alternate if the court finds the juror is "unable to perform his or her duty." ([Cal. Pen. Code] § 1089.) A juror's "actual bias," for example, "which would have supported a challenge for cause, renders him 'unable to perform his duty' and thus subject to discharge...." (*People v. Keenan* (1988) 46 Cal.3d 478, 532.)
>
> "Once a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty 'to make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged. [Citation]." (*People v. Espinoza* (1992) 3 Cal.4th 806, 821.) However, "not every incident involving a juror's conduct requires or warrants further investigation." (*People v. Cleveland* (2001) 25 Cal.4th 466, 478; see also *People v. Beeler*

(1995) 9 Cal.4th 953, 989 ["a hearing is not required in all circumstances"].) "'As our cases make clear, a hearing is required only where the court possesses information which, if proven to be true, would constitute "good cause" to doubt a juror's ability to perform his [or her] duties and would justify his [or her] removal from the case. [Citation.]' [Citation.]" (*People v. Cleveland*, *supra*, 25 Cal.4th at p. 478; see also, e.g., *People v. Espinoza*, *supra*, 3 Cal.4th at p. 821 [no hearing required absent evidence juror was actually asleep during trial]; *People v. Kaurish* (1990) 52 Cal.3d 648, 694 [no hearing required absent evidence juror's derogatory remark reflected bias against the defense as opposed to impatience with the proceedings].)

Moreover, "California courts have recognized the need to protect the sanctity of jury deliberations." (*People v. Cleveland*, *supra*, 25 Cal.4th at p. 475.) "Jurors may be particularly reluctant to express themselves freely in the jury room if their mental processes are subject to immediate judicial scrutiny. The very act of questioning deliberating jurors about the content of their deliberations could affect those deliberations." (*Id.* at p. 476.) "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct – like the ultimate decision to retain or discharge a juror – rests within the sound discretion of the trial court. [Citation.]" (*People v. Ray* (1996) 13 Cal.4th 313, 343.)

Assuming, without deciding, that [Petitioner] did not forfeit his claim by failing to request a hearing below, we conclude the contention is without merit. Juror No. 2 clearly set forth his or her concerns in the note – that he or she "found it offensive" that defense counsel during voir dire, then later a fellow juror during deliberations, "wanted to be sure that [he or she] was not bias[ed] toward the defendant based on ethnicity." Thus, the court had sufficient information from which to determine the issue that needed to be addressed, and no further investigation was necessary.

[Petitioner] asserts the court should have, "at a minimum," questioned Juror No. 2 and the "offending juror" because the note showed there was a "strong possibility" of juror misconduct in the form of "racial bias and improper pressure on a juror." However, Juror No. 2 did not accuse the fellow juror of racism or coercion and did not ask to be discharged or have the fellow juror discharged. Rather, he or she simply expressed his or her offense at defense counsel and the fellow juror's inquiry and asked the court for guidance. "'Jurors may be expected to disagree during deliberations, even at times in heated fashion.'" (*People v. Keenan*, *supra*, 46 Cal.3d at pp. 540, 541 [a juror's comment to the lone holdout juror that he was going to "kill" her unless she changed her vote was "but an expression of frustration, temper, and strong conviction against the contrary views of another panelist"].) Juror No. 2's note did not put the court on notice that there was reason to believe the fellow juror was biased against [Petitioner] on racial grounds or was improperly attempting to coerce Juror No. 2 into voting guilty by invoking race. Under these circumstances, the court reasonably determined that the best way to initially address the issue was to remind the jurors, through CALCRIM 3550, to "[k]eep an open

mind," "openly exchange [their] thoughts and ideas about the case," "treat one another courteously," and "To not change [their] mind[s] just because other jurors disagree with you." There was no abuse of discretion.

(Ans. Ex. E at 4-6.)

Petitioner's claim is without merit. The state court's rejection of this claim was neither contrary to, or an unreasonable application of, Supreme Court precedent under Tracey v. Palmateer, 341 F.3d at 1045, which does not require state or federal courts to hold a hearing every time a claim of juror bias is raised by the parties. Here, neither party asserted a claim of juror bias. Rather, a concern came directly from a juror who wrote a note expressing offense at having his or her impartiality questioned based on race. See supra at 5. The note did not indicate that the juror was racially biased. Id. Rather, as the juror points out, the issue of his or her impartiality had already been raised during jury selection, and it was offensive to have it raised again near the end of the deliberation process. Id. Nor did the note indicate that there was any juror misconduct by the fellow juror mentioned therein, and the state court was not unreasonable in concluding that the fellow juror may have been offensive, but not coercive. Id. at 8. Based on the content of the note, it cannot be said that the trial court was presented with even a colorable claim of juror bias such that a hearing may have been appropriate to explore the issue. Hedlund, slip op. at 26.

Lastly, although the trial court did not hold a hearing, his actions with respect to the note were not unreasonable or indicate a complete disregard of due process under Smith, 455 U.S. at 218: he made the note part of the record, conferred in chambers with counsel, and gave the parties an opportunity to make statements on the record. See supra at 5. Neither party raised any objection to the trial court's decision to proceed in the manner presented. Id. The trial court's decision to reread CALCRIM 3550 appeared to have sufficiently resolved Juror No. 2's concerns because the jury returned verdicts later the same day. Id. Because the state court's

rejection of this claim was not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, Petitioner is not entitled to federal habeas relief.

## CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

IT IS SO ORDERED.

DATED:   8/5/2014

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

GREGORY A. McFARLAND,

        Petitioner,

  v.

RICK HILL, Warden,

        Respondent.

Case Number: CV13-00147 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 8/5/2014, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gregory Anthony McFarland AI-1206
Folsom State Prison
P.O. Box 950
Folsom, CA 95763

Dated: 8/5/2014

                                  Richard W. Wieking, Clerk
                                  /s/By: Elizabeth Garcia, Deputy Clerk